JON M. SANDS
Federal Public Defender
**RYAN MOORE**
Assistant Federal Public Defender
State Bar No. 023372
407 W. Congress St., Suite 501
Tucson, AZ 85701-1716
Telephone: (520) 879-7500
*ryan_moore@fd.org*
Attorney for Movant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Holmes,<br><br>　　　　　Movant,<br><br>vs.<br><br>United States of America,<br><br>　　　　　Respondent. | No. _____<br><br>Criminal No. 4:12-cr-02410-JGZ-1<br><br>**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255** |

Movant, Stephen Holmes, by and through counsel, hereby moves this Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## I.    INTRODUCTION

In *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson II*), the Supreme Court held that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e), is void for vagueness. It follows that the identical residual clause in the "crime of violence definition in U.S.S.G. § 4B1.2(a)(2), as incorporated by the career offender guideline, U.S.S.G. § 4B1.1, is also void for vagueness. On August 23, 2013, this Court sentenced Mr. Holmes to 131 months in prison after determining that he qualified as a career offender based on an instant offense and two prior convictions for unarmed bank robbery in violation of 18 U.S.C. § 2113(a). In light of *Johnson II*, those convictions no longer qualify as "crimes of violence" and, thus, his sentence was imposed in violation of the Constitution or the laws of the United States.

## II.    STATEMENT OF FACTS

On December 5, 2012, a grand jury returned an indictment charging Holmes with one count of bank robbery in violation of 18 U.S.C. § 2113(a).  (Doc. 1.)[1]

On June 14, 2013, he pleaded guilty to the indictment without a plea agreement. (Doc. 19.)

At sentencing on August 23, 2013, the Court adopted the PSR's conclusion that he qualified as a career offender under U.S.S.G. § 4B1.1, finding that his current and prior convictions for bank robbery under 18 U.S.C. § 2113(a) qualified as "crimes of violence."  (PSR ¶ 20; SOR.)  The Court determined that the Guidelines range was 151-188 months at Criminal History Category VI, and imposed a sentence of 131 months, concurrent with a sentence previously imposed in the Northern District of California in 3:10-cr-108-SI-1.  (SOR; Doc. 28.)

Holmes did not file a direct appeal, and he has not previously filed a Motion under 28 U.S.C. § 2255 or any other collateral attack in this case.[2]

Without the career offender enhancement, the Guidelines range is 57-71 months at Criminal History Category V.  (PSR ¶¶ 19-22, 40.)

His projected release date is May 3, 2021.

## III.    CLAIMS BASED ON *JOHNSON II*

In light of *Johnson II*, Mr. Holmes's sentence was imposed in violation of the Constitution or the laws of the United States.

A defendant is subject to the career offender guideline if his instant federal offense of conviction is either a "crime of violence" or a "controlled substance offense," and he has at least two such prior convictions.  U.S.S.G. § 4B1.1.  The term "crime of violence"

---

[1]  All citations to the Clerk's Record refer to the underlying case, CR12-2410-JGZ, unless otherwise noted.

[2]  He filed a Motion under § 2255 in the Northern District of California.  (3:10-cr-108-SI-1, Doc. 25.)

2

is defined as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—"

>    (1)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
>    (2)    is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. §§ 4B1.2(a), § 7B1.1, comment. (n.2).  Section 4B1.2's commentary also lists the crime of generic "robbery."  U.S.S.G. § 4B1.2, comment. (n.1).

The residual clause in the Guidelines is void for vagueness.  Further, Mr. Holmes's convictions do not satisfy the force clause or qualify as any of the enumerated offenses.  Therefore, he is no longer a career offender.

### A.    *Johnson II* renders the residual clause of § 4B1.2(a) void for vagueness.

*Johnson II*'s holding invalidating the ACCA's residual clause applies equally to the residual clause of § 4B1.2(a)(2).  The two residual clauses are identical.  *Compare* U.S.S.G. § 4B1.2(a)(2) *with* 18 U.S.C. § 924(e)(2)(B)(ii).  The Ninth Circuit has interpreted them interchangeably.  *United States v. Willis*, 795 F.3d 986, 996 (9th Cir. 2015); *United States v. Terrell*, 593 F.3d 1084, 1087 n.1 (9th Cir. 2010); *United States v. Crews*, 621 F.3d 849, 852 n.4 (9th Cir. 2010).

Further, the guidelines are subject to claims of unconstitutional vagueness.  *Peugh v. United States*, 133 S. Ct. 2072, 2078 (2013 (holding that the Ex Post Facto Clause applies to advisory guidelines); *see also United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997) (then-mandatory guidelines were subject to vagueness challenges); *Gall v. United States*, 552 U.S. 38, 49 (2007 (continuing to require that the advisory guidelines are a starting point for sentencing).

Therefore, the due process principles espoused in *Johnson II* compel the conclusion that the identical residual clause of § 4B1.2 is also unconstitutionally vague.  *United States v. Pawlak*, --- F.3d ----, 2016 WL 2802723, at *1 (6th Cir. May 13, 2016); *United States v. Madrid*, 805 F.3d 1204, 1211 (10th Cir. 2015) *see also Dimaya v. Lynch*,

1    803 F.3d 1110, 1120 (9th Cir. 2015 (holding that 18 U.S.C. § 16(b)'s residual clause is

2    unconstitutionally vague); *United States v. Benavides*, 617 F. App'x 790 (9th Cir. 2015)

3    (remanding for resentencing in light of Government's concession that *Johnson II* applies

4    to the similarly worded residual clause in the Guidelines).

5        Therefore, Mr. Holmes's bank robbery convictions no longer qualify as a "crimes

6    of violence" under the now-void residual clause of § 4B1.2(a)(2).

7        **B.    Mr. Holmes's bank robbery convictions no longer qualify as a crime of**
         **violence under the "force" or "enumerated offense" clauses of**
8        **§ 4B1.2(a).**

9            **1.    Bank robbery does not qualify under the force clause.**

10       Under the force clause, an offense must have "as an element the use, attempted

11   use, or threatened use of physical force against the person of another."  U.S.S.G.

12   § 4B1.2(a)(1).  In a 1990 case, the Ninth Circuit held that bank robbery was a crime of

13   violence under § 4B1.2's force clause because it required that money or property be taken

14   through force and violence or through intimidation, which amounted to a "threatened use

15   of physical force."  *See United States v. Selfa*, 918 F.2d 749, 751 (9th Cir. 1990).

16   Intervening Supreme Court and en banc Ninth Circuit cases, however, have overruled

17   *Selfa*'s holding on two separate bases.  *See Miller v. Gammie*, 335 F.3d 889, 899-900 (9th

18   Cir. 2003) (en banc) (district courts and appellate panels are not bound by prior circuit

19   precedent if subsequent Supreme Court or en banc Ninth Circuit authority "undercut the

20   theory or reasoning underlying the prior circuit precedent in such a way that the cases are

21   clearly irreconcilable.").

22               **a.    Bank robbery does not require *violent* physical force.**

23       Bank robbery does not require use or threatened use of *violent* physical force—

24   "that is, force capable of causing physical pain or injury to another person." *Johnson v.*

25   *United States*, 559 U.S. 133, 140 (2010) (*Johnson I*) (construing the ACCA's identical

26   force clause at 18 U.S.C. § 924(e)(2)(B)(i)).  Instead, § 2113(a) merely requires that a

27   defendant take property through "intimidation."  *See United States v. Wright*, 215 F.3d

28   1020, 1028 (9th Cir. 2000) ("[O]ne of the elements of the offense is a taking 'by force

4

and violence, or by intimidation.'"). Nothing in the term "intimidation," however, requires a threat of violent physical force. Intimidation is satisfied where there is no explicit threat at all, let alone the threat of violent force. For example, a simple demand for money from a bank teller will support a bank robbery conviction. *See United States v. Hopkins*, 703 F.2d 1102, 1103 (9th Cir. 1983) ("Although the evidence showed that Hopkins spoke calmly, made no threats, and was clearly unarmed, we have previously held that 'express threats of bodily harm, threatening body motions, or the physical possibility of concealed weapon[s]' are not required for a conviction for bank robbery by intimidation.") (quoting *United States v. Bingham*, 628 F.2d 548, 549 (9th Cir. 1980)).

But, as the Ninth Circuit recently held under the ACCA's force clause, an "uncommunicated willingness or readiness to use [physical] force . . . is not a threat to do so." *United States v. Parnell*, --- F.3d ----, 2016 WL 1633167, at *3 (9th Cir. Apr. 12, 2016). A threat of physical force under the force clause "requires some outward expression or indication of an intention to inflict pain, harm or punishment." *Id.* Federal bank robbery has no such requirement. *See Hopkins*, 703 F.2d at 1103 (affirming federal bank robbery conviction based on "threats implicit" in defendant's calm request for money from bank teller). Thus, *Selfa* is no longer good law.

Further, the Ninth Circuit "has defined 'intimidation' under § 2113(a) to mean 'wilfully to take, or attempt to take, in such a way that would put an ordinary, reasonable person in fear of bodily harm.'" *Selfa*, 918 F.2d at 751 (quoting *Hopkins*, 703 F.2d at 1103). But placing a person in fear of bodily harm does not necessarily entail the use or threatened use of violent physical force. The Fourth Circuit has "recognized that, to constitute a predicate crime of violence justifying a sentencing enhancement under the Guidelines, a [predicate] offense must constitute a *use* or *threatened* use of violent force, not simply *result* in physical injury or death." *United States v. Torres-Miguel*, 701 F.3d 165, 169 (4th Cir. 2012); *accord United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010); *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003) ("there is 'a difference between causation of an injury and in injury's causation by the "use of

physical force'"); *United States v. Perez-Vargas*, 414 F.3d 1282, 1287 (10th Cir. 2005); *Whyte v. Lynch*, 807 F.3d 463, 469-72 (1st Cir. 2015).  For example, a defendant could commit bank robbery through intimidation by threatening to poison the teller, but this would not constitute a threatened use of violent physical force, even though it would result in the teller being in fear of bodily harm.  *Cf. Torres-Miguel*, 701 F.3d at 168-69 (holding that California's criminal threats statute does not constitute a crime of violence because "a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force"); *Matter of Guzman-Polanco*, 26 I. & N. Dec. 713, 718 n.7 (BIA 2016) ("Caesar's death at the hands of Brutus and his fellow conspirators was undoubtedly violent; the death of Hamlet's father at the hands of his brother, Claudius, by poison, was not.") (quoting *Rummel v. Estelle*, 445 U.S. 263, 282 n.27 (1980)).[3]  *But see United States v. Melchor-Meceno*, 620 F.3d 1180, 1184-86 (9th Cir. 2010) ("One cannot knowingly place another in fear of being poisoned without threatening to force the poison on the victim."); *United States v. De La Fuente*, 353 F.3d 766, 771 (9th Cir. 2003) (holding that a threatened anthrax poisoning constitutes threatened use of force under § 16(a)).  Therefore, federal bank robbery does not qualify as a crime of violence under the force clause of § 4B1.2, and the contrary holding in *Selfa* is clearly irreconcilable with *Johnson I*.  *See Miller*, 335 F.3d at 899-90.

---

[3] Nothing in the Supreme Court's decision in *United States v. Castleman*, 134 S. Ct. 1405 (2014), changes this analysis.  In *Castleman*, the Court held that a conviction for "intentionally and willfully causing bodily injury" qualified as a "misdemeanor crime of domestic violence" for purposes of prohibiting firearm possession under 18 U.S.C. § 922(g)(9).  134 S. Ct. at 1415.  *Castleman* concluded that "force" for purposes of a "misdemeanor crime of domestic violence" requires nothing more than common-law force, *not* the higher standard of "violent force" that *Johnson I* requires for "crimes of violence" and "violent felonies."  *Id*. at 1413.  The *Castleman* Court further concluded that causing bodily injury, including by poisoning, would necessarily satisfy the common-law force requirement.  *Id*. at 1414-15.  But *Castleman* explicitly did not address whether simply causing injury would constitute "violent" force, and therefore its conclusion has no bearing on the instant case. *See id*. at 1413; *see also Whyte v. Lynch,* 807 F.3d 463, 470-71 (1st Cir. 2015) (discussing *Castleman*); *cf. United States v. Rice,* 813 F.3d 704, 707 (8th Cir. 2016) (Kelly, J., dissenting) (same).

6

### b. Bank robbery does not require an *intentional* use or threatened use of physical force.

Bank robbery no longer qualifies under the force clause because it does not require the *intentional* use or threatened use of physical force. In order for an offense to qualify as a crime of violence, an offense must have as an element the *intentional* use or threat of physical force. The Supreme Court first announced this rule in *Leocal v. Ashcroft*, holding that DUI was not a crime of violence under the force clause because the offense could be committed through mere negligence. 543 U.S. 1, 9-10 (2004). The en banc Ninth Circuit went on to interpret *Leocal* as requiring "that to constitute a federal crime of violence an offense must involve the intentional use of force against the person or property of another." *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006) (en banc) ("In light of *Leocal*, we expressly overrule our cases holding that crimes of violence under 18 U.S.C. § 16 may include offenses committed through the reckless, or grossly negligent, use of force."); *see also United States v. Gomez-Leon*, 545 F.3d 777, 787 (9th Cir. 2008) (holding that to qualify as a crime of violence under the force clause, "the underlying offense must require proof of an *intentional* use of force") (emphasis in original). Therefore, to qualify as a crime of violence under section 4B1.2(a)(1), an offense must require the intentional use or threat of force.[4] *See id.*

Bank robbery, however, has no such requirement of an intentional use or threat of force. A defendant may be convicted of committing the offense through "intimidation," even absent any proof that he intended to intimidate the victim. In *Carter v. United States*, 530 U.S. 255, 268 (2000), the Supreme Court held that bank robbery is a general intent crime. That is, the defendant must have "possessed knowledge with respect to the *actus reus* of the crime." *Id.* Following *Carter*, courts have held that the *actus reus* of bank robbery is the taking of money and therefore, the statute requires a showing only

---

[4] *Leocal* and *Fernandez-Ruiz* were interpreting the definition of a "crime of violence" in 18 U.S.C. § 16; however, the Ninth Circuit has applied their holdings to § 4B1.2. *See United States v. Jennen*, 596 F.3d 594, 601 & n.5 (9th Cir. 2010).

7

that the defendant "knew he was physically taking money." *See United States v. Yockel*, 320 F.3d 818, 823 (8th Cir. 2003). Whether the defendant took money via an intentional use of force and violence or intimidation is "irrelevant." *Id.*; *see also United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005) ("[A] defendant can be convicted under section 2113(a) even if he did not intend for an act to be intimidating."). Thus, in *Yockel*, the Eighth Circuit affirmed the exclusion of any evidence regarding whether the defendant intended to use force and violence or intimidation. 320 F.3d at 823.

*Yockel* and *Kelley* are in accord with this Circuit's longstanding, pre-*Carter* case law, which also holds that, at least in cases involving intimidation, whether a defendant "specifically intended to intimidate . . . is irrelevant." *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993) (holding that defendant was not entitled to jury instruction requiring proof of his specific intent to intimidate the bank teller). Stated differently, a defendant may be convicted of bank robbery even if he did not intend to put another person in fear of injury. *See id.* This holding stems from the court's conclusion that the definition of taking, or attempting to take "'by intimidation' means willfully to take, or attempt to take, in such a way that would put an ordinary, reasonable person in fear of bodily harm." *United States v. Alsop*, 479 F.2d 65, 67 n.4 (9th Cir. 1973). Because this definition focuses on the effect of the accused's actions on the victim, "[t]he determination of whether there has been an intimidation should be guided by an objective test focusing on the accused's actions," *not* his or her intent. *Id.*

Therefore, because bank robbery lacks the intentional mens rea element required for a crime of violence, it cannot qualify as a crime of violence under the force clause, and *Selfa*'s prior contrary holding is clearly irreconcilable with *Leocal* and *Fernandez-Ruiz*. *See Miller*, 335 F.3d at 899-90.

### 2.    After *Johnson II*, bank robbery does not qualify as an enumerated offense under the commentary to § 4B1.2.

The text of § 4B1.2(a)(2) enumerates four offenses that qualify as crimes of violence, but robbery is not included. Instead, Application Note 1 in the commentary to

8

1   § 4B1.2 contains a separate list of offenses, including robbery, which the application note
2   states qualify as crimes of violence.  U.S.S.G. § 4B1.2, comment. (n.1).  However, with
3   the residual clause of § 4B1.2(a)(2) now void, the crime of "robbery"—listed only in
4   "Application Note 1"—must be disregarded because it no longer explains, and is
5   inconsistent with, the text of the guideline that remains.  *United States v. Soto-Rivera*,
6   811 F.3d 53, 62 (1st Cir. 2016).  "With § 4B1.2(a) stripped of its residual clause, the
7   government's position that we may rely on Application Note 1 to uphold [the
8   defendant's] designation as a Career Offender is hopeless."  *Id.* at 60.

9       Guideline commentary is authoritative only if not inconsistent with the text of the
10  guideline itself, which is controlling.  *Stinson v. United States*, 508 U.S. 36, 38 (1993).
11  Commentary that is inconsistent with the plain text of a guideline must be disregarded.
12  *United States v. Lambert*, 498 F.3d 963, 966, 971 (9th Cir. 2007).

13      The Sentencing Commission included robbery in the commentary to define and
14  explain the residual clause, i.e., the application note is merely a list of offenses that the
15  Commission believed fell within the residual clause.  *See United States v. Williams*, 110
16  F.3d 50, 52 (9th Cir. 1997) (citing to §4B1.2's commentary that "kidnapping" is a crime
17  of violence in support of the conclusion that a kidnapping conviction qualified under the
18  residual clause).  The text of the guideline itself includes both "crimes against property"
19  and the residual clause, which covered "similar crimes … where the conduct involved
20  presents a serious risk of injury to a person," *see Begay v. United States*, 553 U.S. 137,
21  144 (2008), and is fleshed out and explained by the commentary.  In other words, the
22  commentary reflects the Commission's view that robbery presents a "serious potential
23  risk of physical injury to another."

24      The Supreme Court interpreted the similar inclusion of "attempt" crimes in
25  § 4B1.2's commentary as applying to the residual clause.  *See James v. United States*,
26  550 U.S. 192, 206 (2007) ("This judgment was based on the Commission's review of
27  empirical sentencing data and presumably reflects an assessment that attempt crimes

28

1   often pose a similar *risk of injury* as completed offenses.") (emphasis supplied),

2   *overruled by Johnson II*, 135 S. Ct. at 2551.

3           This Ninth Circuit has also linked robbery to the residual clause.  First, it has

4   defined generic robbery in a way that shares the residual clause's focus on a potential risk

5   of physical injury.  *See United States v. Becerril-Lopez*, 541 F.3d 881, 891 (9th Cir.

6   2008) (a "misappropriation of property under circumstances involving immediate danger

7   to the person").  Second, it has repeatedly held that robbery convictions qualify as

8   predicates under the residual clause.  *See*, *e.g.*, *United States v. Prince*, 772 F.3d 1173,

9   1178 (9th Cir. 2014) (under the ACCA); *United States v. Chandler*, 743 F.3d 648, 655

10  (9th Cir. 2014) (same), *vacated and remanded*, 619 F. App'x 641 (9th Cir. 2015).

11          In contrast, the commentary crime of robbery does not interpret the force clause

12  because, like the other listed commentary crimes, robbery statutes often do not

13  categorically require, under the force clause's strict elements-based approach, "violent"

14  physical force, force against a person (rather than property), and an intentional (rather

15  than reckless) use of force.  *See*, *e.g.*, *United States v. Dixon*, 805 F.3d 1193, 1197 (9th

16  Cir. 2015); *United States v. Dunlap*, --- F. Supp. 3d ----, 2016 WL 591757, at *4-5 (D.

17  Or. Feb. 12, 2016); *United States v. Bell*, --- F. Supp. 3d ----, 2016 WL 344749, at *8-10

18  (N.D. Cal. Jan. 28, 2016).  Thus, the commentary crimes were intended to define the

19  residual clause.

20          Without the residual clause, however, no remaining part of the guideline itself

21  incorporates the commentary crime of robbery.  As the First Circuit reasoned,

22          By its clear language, once shorn of the residual clause § 4B1.2(a) sets
            forth a limited universe of specific offenses that qualify as a "crime of
23          violence."  There is simply no mechanism or textual hook in the Guideline
            that allows us to import offenses not specifically listed therein
24          into § 4B1.2(a)'s definition of "crime of violence."

25  *Soto-Rivera*, 811 F.3d at 60.  Indeed, no remaining term or phrase in the text's definition

26  requires additional interpretation, explanation, or definition.  *See United States v. Shell*,

27  789 F.3d 335, 343-46 (4th Cir. 2015) (contrasting U.S.S.G. § 2L1.2(b)(1)(A)(ii), which

28  uses the term "crime of violence" in the text but defines it entirely within the application

10

note).  Thus, relying on crimes listed only in the commentary "would be inconsistent with the post-*Johnson* text of the Guideline itself."  *Soto-Rivera*, 811 F.3d at 60.

The Supreme Court has held that "[i]f … commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline." *Stinson*, 508 U.S. at 43.  Here, following the commentary to designate a robbery conviction as a crime of violence, when that conviction would *not otherwise qualify* under the definition in the guideline's text—as it has been narrowed by the Supreme Court—would "result in violating the dictates of the [guideline]."  *See id.* at 38.

Furthermore, with the residual clause no longer available to incorporate the commentary crimes, interpreting that commentary to expand what is now an unambiguous definition in the text of the guideline would raise separation-of-powers concerns.  The Sentencing Reform Act requires the Sentencing Commission to "submit to Congress amendments to the guidelines," and it provides that Congress may modify or disapprove such amendments before their effective date.  28 U.S.C. § 994(p); *see also Mistretta v. United States*, 488 U.S. 361, 393-94 (1989) (emphasizing, in upholding the Commission against a separation-of-powers challenge, that this requirement makes the Commission "fully accountable to Congress").  However, Congress did not expressly authorize the issuance of guideline commentary, and there is no requirement that Congress review it.  *See* 28 U.S.C. § 994(p); *Stinson*, 508 U.S. at 40-41.  For this reason, the Supreme Court held that guideline commentary is akin to an agency's interpretation of its own regulations, which is only valid if consistent with those regulations.  *Stinson*, 508 U.S. at 45; *see also Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000) (deferring to an agency's opinion letter that interpreted an unambiguously permissive regulation as mandatory "would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation").  Thus, with the residual clause now inapplicable, the commentary may not be interpreted to expand the unambiguous definition in the text of the guideline.

After *Johnson II*, the Sentencing Commission has acted to eliminate, in future cases, the resulting inconsistency between the commentary and the guideline.  Effective August 1, 2016, absent congressional disapproval, an amendment will delete the residual clause and move the crime of robbery from the application note to the text of the guideline.  USSC, *Amendment to the Sentencing Guidelines* at 2-3, 6 (Jan. 21, 2016), *available at* http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20160121_RF.pdf (last visited Mar. 24, 2016).

Therefore, "robbery," as mentioned in the Guidelines commentary, only qualified as a "crime of violence" based on the Commission's interpretation and explanation of the residual clause, which is void for vagueness.  Accordingly, post-*Johnson II*, a conviction cannot qualify as a crime of violence under the commentary to § 4B1.2 because that commentary is now inconsistent with what remains.  *See Soto-Rivera*, 811 F.3d at 60.

## IV.    MOVANT IS ENTITLED TO RELIEF UNDER § 2255

In addition to prevailing on the merits, Movant has also satisfied the procedural requirements of 28 U.S.C. § 2255.

### A.    His claim is cognizable under § 2255(a).

A federal prisoner may move to "vacate, set aside or correct" his sentence if, inter alia, it "was imposed in violation of the Constitution."  28 U.S.C. § 2255(a).  A claim based on *Johnson II* is constitutional and therefore cognizable in a Guidelines case.  *See Coleman v. United States*, 763 F.3d 706, 708 (7th Cir. 2014) (although an erroneous determination of an advisory guideline range "generally [is] not cognizable on a § 2255 motion," relief "is available" for "an error of constitutional . . . magnitude").  Movant's sentence was imposed in violation of the Constitution because it was, and could only be, predicated on the "unconstitutionally vague" residual clause, and "imposing an increased sentence under the residual clause ... violates the Constitution's guarantee of due process."  *Johnson II*, 135 S. Ct. at 2563.  As demonstrated above, *Johnson*'s constitutional holding regarding ACCA's residual clause applies to the identically

1   worded residual clause in § 4B1.2(a).  Therefore, his claim for relief is cognizable under

2   § 2255(a).

3       **B.    *Johnson II* applies retroactively on collateral review.**

4       A Supreme Court decision applies retroactively to cases on collateral review if it

5   announces a "new" rule that is "substantive."  *Schriro v. Summerlin*, 542 U.S. 348, 351

6   (2004); *see also Danforth v. Minnesota*, 552 U.S. 264, 266 (2008) ("New constitutional

7   rules announced by [the Supreme] Court that [are substantive or watershed rules of

8   criminal procedure] must be applied in . . . all federal habeas corpus proceedings.");

9   *Teague v. Lane*, 489 U.S. 288, 316 (1989) (plurality op.) (new rule must "be applied

10  retroactively to *all* defendants on collateral review through one of the two exceptions we

11  have articulated").

12      The Supreme Court held in *Welch v. United States*, 136 S. Ct. 1257 (2016), that

13  the new rule announced in *Johnson II* is substantive and, thus, retroactive to cases on

14  collateral review.  The Court reasoned that by striking down the residual clause as void

15  for vagueness, the Court "changed the substantive reach" of a sentencing enhancement.

16  *Id.* at 1265; *see id.* (holding that *Johnson II* is substantive, not procedural, because the

17  residual clause "can no longer mandate or authorize any sentence" and because "'even

18  the use of impeccable factfinding procedures could not legitimate' a sentence based on

19  that clause") (quoting *United States v. United States Coin & Currency*, 401 U.S. 715, 724

20  (1971)).  Therefore, based on the Supreme Court's unambiguous holding in *Welch*, the

21  rule announced in *Johnson II* applies retroactively on collateral review.  *See*, *e.g.*, *United*

22  *States v. Dean*, No. 3:13-CR-00137-SI, 2016 WL 1060229, at *12-16 (D. Or. Mar. 15,

23  2016) (holding that rule announced in *Johnson II* applies retroactively to a motion to

24  under § 2255 challenging increase in defendant's sentence under § 4B1.2); *United States*

25  *v. Rigoberto Ramirez*, No. CR10-10008-WGY, 2016 WL 3014646, at *6-9 (D. Mass.

26  May 24, 2016) (same); *see also Reina-Rodriguez v. United States*, 655 F.3d 1182, 1189

27  (9th Cir. 2011) (holding that decision limiting the definition of burglary under the ACCA

28

                                          13

is substantive because "it altered the conduct that substantively qualifies as burglary," and thus applies retroactively in Guidelines cases).

    **C.**    **This claim is timely under 28 U.S.C. § 2255(f)(3).**

       This motion is timely under 28 U.S.C. § 2255(f)(3), which provides for a one-year limitations period to run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Because *Johnson II* has been made retroactive to cases that are final on direct review, and this motion is filed less than one year after *Johnson II* was decided on June 26, 2015, this motion is timely under 28 U.S.C. § 2255(f)(3). *See Dodd v. United States*, 545 U.S. 353 (2005).

**V.**    **CONCLUSION**

       Therefore, Mr. Holmes respectfully asks this Court to vacate his sentence and schedule a new hearing so that he can be re-sentenced without application of the career offender enhancement or to grant him any other relief that is just and practicable.

       RESPECTFULLY SUBMITTED:    June 6, 2016

                                      JON M. SANDS
                                      Federal Public Defender

                                      *s/ Ryan Moore*
                                      J. RYAN MOORE
                                      Assistant Federal Public Defender

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 28 U.S.C. § 2242 CERTIFICATION

Pursuant to 28 U.S.C. § 2242 and Rule Governing Section 2255 Proceedings 2(b)(5), I declare under penalty of perjury under the laws of the State of Arizona that the facts alleged in this motion are true and correct to the best of my knowledge, and that this declaration was executed on June 6, 2016, in Tucson, Arizona.


*s/ Ryan Moore*
J. RYAN MOORE
Assistant Federal Public Defender


## CERTIFICATE OF SERVICE

*The above signed does hereby certify that on the date above he electronically transmitted this document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing, and that all case participants are registered CM/ECF users and that service will be accomplished by the CM/ECF system.*